IN THE DISTRICT COURT IN AND FOR PITTSBURG COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| ADVANCED DERMATOLOGY, INC., P.C., an Oklahoma Professional Corporation, <br><br> Plaintiff, <br><br> v. <br><br> ZELTIQ AESTHETICS, INC.; and SCOTT SARGEANT, <br><br> Defendants. | ) ) ) ) ) ) ) ) Case No. CJ-17-116 ) ) ) ) ) |

RECEIVED AND FILED
IN DISTRICT COURT
PITTSBURG COUNTY, OKLA

MAY 0 8 2017

BY CINDY LEDFORD
DEPUTY

## PETITION

**COMES NOW** Plaintiff, Advanced Dermatology, Inc., P.C., an Oklahoma Professional Corporation, by and through its attorneys of record and for its causes of action against Defendants Zeltiq Aesthetics, Inc., and Scott Sargeant, alleges and states as follows:

### Jurisdiction and Venue

1. Plaintiff Advanced Dermatology, Inc., P.C. ("Advanced Dermatology"), is a corporation duly organized and existing under the laws of the State of Oklahoma, with its principal place of business in McAlester, Pittsburg County, State of Oklahoma.

2. Upon information and belief, at all times material hereto, Defendant Zeltiq Aesthetics, Inc. ("Zeltiq"), is a Delaware corporation with its principal place of business in Pleasanton, State of California.

3. Upon information and belief, at all times material hereto, Defendant Scott Sargeant ("Sargeant"), is an individual residing in Edmond, Oklahoma County, State of Oklahoma.

4. The occurrences and actions complained of herein occurred primarily in Pittsburg County, State of Oklahoma.

Notice of Removal

Ex.

A

5. Venue and jurisdiction are proper with this Court.

**General Factual Allegations Common to All Causes of Action**

6. In or around July of 2016, Advanced Dermatology's representatives attended a luncheon to learn about medical equipment, particularly a CoolSculpting device ("Equipment") that Zeltiq sold.

7. Thereafter, Sargeant, a salesman for Zeltiq, arrived at Advanced Dermatology's place of business in McAlester, Oklahoma on July 29, 2016, unannounced.

8. Based upon information and belief, Sargeant's compensation was, at least partially, performance based, and he was encouraged to make false representations in order to attempt to induce customers to purchasing equipment and products of Zeltiq they did not desire.

9. At the time of Sargeant's arrival on July 29, 2016, Dr. Gary Augter ("Dr. Augter"), Advanced Dermatology's president, was conducting a medical procedure and an 'Open House' was also occurring.

10. Advanced Dermatology's Chief Financial Officer, Tina Wilson, informed Sargeant that they did not have time to discuss any matters related to the Equipment because of the Open House and because Dr. Augter was busy with a procedure.

11. Despite this, Sargeant proceeded to hand Ms. Wilson a stack of papers that stated "credit application." Sargeant informed Ms. Wilson that if Advanced Dermatology was interested in the Equipment, Dr. Augter should complete this credit application and "they could go from there." The papers Sargeant handed to Ms. Wilson were clipped in the top corner so that all Ms. Wilson saw was that it was a credit application.

12. There were also dollar figures listed in the document, which Ms. Wilson inquired about. Sargeant informed Ms. Wilson those figures were there so that he could have an amount of credit for which to apply from the finance company.

13. During this time, Ms. Wilson also visited with Dr. Augter about the credit application while he was conducting a procedure. Dr. Augter specifically asked Ms. Wilson if the credit application meant that he was buying the Equipment and to convey that question to Sargeant.

14. Dr. Augter was not yet satisfied with the price or settled on whether he wanted to use the Equipment in his practice.

15. Ms. Wilson then relayed Dr. Augter's questions and concerns about the Equipment to Sargeant who then assured Ms. Wilson that filling out the credit application was not buying the Equipment.

16. Ms. Wilson informed Dr. Augter of Sargeant's representations that he was not buying the Equipment.

17. Believing he was not buying the Equipment, and not intending or agreeing to buy the Equipment, Dr. Augter executed the documents he believed were merely a credit application based entirely upon Sargeant's representations.

18. On or about August 5, 2016, the Equipment was delivered to Advanced Dermatology's place of business. A secretary unwittingly signed for the Equipment because Dr. Augter and Ms. Wilson were out of the office.

19. After delivery of the Equipment, Advanced Dermatology discovered that the credit application signed was actually a fraudulently concealed Master Sales Agreement for the purchase of the Equipment and not the credit application Sargeant had represented.

20. Accordingly, Advanced Dermatology appropriately rejected said Equipment by phone and text message, for the reason that Sargeant had stated that the paperwork was merely to determine if Advanced Dermatology could qualify for financing for the amount stated in the paperwork.

21. None of the paperwork was left with Advanced Dermatology after it was signed, further concealing the purpose of the documents and delaying discovery of the fraud.

22. Advanced Dermatology has demanded that Zeltiq pick-up the Equipment numerous times, but Zeltiq refuses to do so, and instead threatens it with litigation as is their pattern and practice.

23. Sargeant made false representations to Advanced Dermatology that Advanced Dermatology was filling out a credit application and that filling out said credit application did not constitute buying the Equipment.

24. These false representations were made as positive assertions and were known to be false or made recklessly without knowledge of the truth.

25. Sargeant intended Advanced Dermatology to act upon these false material representations and to execute the Master Sales Agreement for the purchase of the Equipment.

26. Advanced Dermatology relied upon the false material representations to its detriment, as Advanced Dermatology executed the Master Sales Agreement for the purchase of the Equipment, believing the documents to be a credit application.

27. As a result of Sargeant's actions, Advanced Dermatology has suffered damages resulting from its execution of the Master Sales Agreement for the purchase of the Equipment.

28. Sargeant's representations were intentional, reckless, and in disregard for the rights of Advanced Dermatology, sufficient for a finding of an award of punitive damages.

29. Further, at all relevant times, Sargeant was acting as an agent, employee, or representative of Zeltiq. Thus, Zeltiq is also responsible for the representations of Sargeant.

30. Additionally, Sargeant concealed and failed to disclose the true nature of the documents Advanced Dermatology executed because he failed to disclose that it was a Master Sales Agreement for the purchase of the Equipment.

31. This fact was material, as a reasonably careful person under these circumstances and in the position of Advanced Dermatology would attach importance to these facts in its determination of whether or not to execute the documents.

32. Sargeant concealed and failed to disclose the true nature of the documents with an intent of creating a false impression that Advanced Dermatology was executing a credit application.

33. This was done with the intent of inducing Advanced Dermatology to execute the Master Sales Agreement for the purchase of the Equipment.

34. Sargeant had a duty to disclose the true nature of the documents.

35. Advanced Dermatology relied upon these facts as to the nature of the documents when Advanced Dermatology executed the documents.

36. As a result of Sargeant's actions, Advanced Dermatology has suffered damages resulting from its execution of the Master Sales Agreement for the purchase the Equipment.

37. Sargeant's concealments and nondisclosures were intentional, reckless, and in disregard for the rights of Advanced Dermatology, sufficient for a finding of an award of punitive damages.

38. Further, at all relevant times, Sargeant was acting as an agent, employee, or representative of Zeltiq. Thus, Zeltiq is also responsible for the concealments and nondisclosures of Sargeant.

39. Additionally, Sargeant suggested and made as a positive assertion that Advanced Dermatology was filling a credit application and that filling out said credit application did not constitute buying the Equipment.

40. Sargeant suppressed the true nature of the documents Advanced Dermatology executed in that he failed to disclose that it was a Master Sales Agreement for the purchase of the Equipment.

41. As a result, Advanced Dermatology executed the Master Sales Agreement without ever having any intention of performing it.

42. Sargeant intended to deceive and induce Advanced Dermatology into executing the Master Sales Agreement for the purchase of the Equipment.

43. As a result of Sargeant's actions, Advanced Dermatology has suffered damages and was induced into executing the Master Sales Agreement for the purchase of the Equipment.

44. Accordingly, Advanced Dermatology is entitled to rescission of the Master Sales Agreement.

45. Alternatively, Advanced Dermatology is entitled to damages for such amounts suffered as a result of the execution of the Master Sales Agreement and an award of punitive damages, as Sargeant's assertions and suppressions were intentional, reckless, and in disregard for the rights of Advanced Dermatology.

46. Further, at all relevant times, Sargeant was acting as an agent, employee, or representative of Zeltiq. Thus, Zeltiq is also responsible for the assertions and suppressions of Sargeant.

47. Additionally, Sargeant breached his duty owed to Advanced Dermatology, gained an advantage, and mislead Advanced Dermatology to its prejudice by suggesting and making as a positive assertion that Advanced Dermatology was filling a credit application and that filling out said credit application did not constitute buying the Equipment.

48. Sargeant breached his duty owed to Advanced Dermatology, gained an advantage, and mislead Advanced Dermatology to its prejudice by suppressing the true nature of the documents Advanced Dermatology executed in that he failed to disclose that it was a Master Sales Agreement for the purchase of the Equipment.

49. As a result of these actions, Advanced Dermatology has suffered damages and was induced into executing the Master Sales Agreement for the purchase of the Equipment.

50. Accordingly, Advanced Dermatology is entitled to rescission of the Master Sales Agreement.

51. Alternatively, Advanced Dermatology is entitled to damages suffered as a result of the execution of the Master Sales Agreement and an award of punitive damages, as Sargeant's assertions and suppressions were intentional, reckless, and in disregard for the rights of Advanced Dermatology.

52. Further, at all relevant times, Sargeant was acting as an agent, employee, or representative of Zeltiq. Thus, Zeltiq is also responsible for the assertions and suppressions of Sargeant.

53. Additionally, Sargeant suggested and made as positive assertions, certain false representations to Advanced Dermatology that it was filing out a credit application and that filling out said credit application did not constitute buying the Equipment.

54. Sargeant suppressed, concealed, and failed to disclose to Advanced Dermatology the true nature of the documents in that it was a Master Sales Agreement for the purchase of the Equipment.

55. These assertions, representations, and omissions were done with the intent to deceive so that Advanced Dermatology would execute the Master Sales Agreement for the purchase of the equipment.

56. Advanced Dermatology relied upon these assertions, representations, and omissions in its execution of the documents.

57. Such fact as to the true nature of the documents is a material fact, as a reasonably careful person under these circumstances and in the position of Advanced Dermatology would attach importance in its determination of whether or not to execute the documents.

58. Further, at all relevant times, Sargeant was acting as an agent, employee, or representative of Zeltiq. Thus, Zeltiq is also responsible for the assertions and suppressions of Sargeant.

59. Therefore, because the assertions, representations, and omissions went towards the true nature of the contract, the Master Sales Agreement is void and a nullity.

60. Accordingly, Advanced Dermatology seeks a declaration pursuant to 12 O.S. § 1651 *et seq.* that the Master Sales Agreement is void and that no legal rights were created under the Master Sales Agreement.

61. Advanced Dermatology also seeks any damages suffered as a result of the execution of the Master Sales Agreement and an award of punitive damages, as Sargeant's assertions and suppressions were intentional, reckless, and in disregard for the rights of Advanced Dermatology.

62. Additionally, Sargeant suggested and made as positive assertions, certain false representations to Advanced Dermatology that it was filling out a credit application and that filling out said credit application did not constitute buying the Equipment.

63. Sargeant suppressed, concealed, and failed to disclose to Advanced Dermatology the true nature of the documents in that it was a Master Sales Agreement for the purchase of the Equipment.

64. These assertions, representations, and omissions were done with the intent to deceive so that Advanced Dermatology would execute the Master Sales Agreement for the purchase of the Equipment.

65. Advanced Dermatology relied upon these assertions, representations, and omissions in its execution of the documents.

66. Such assertions, representations, and omissions went towards the terms, quality, and nature of the documents.

67. Further, at all relevant times, Sargeant was acting as an agent, employee, or representative of Zeltiq. Thus, Zeltiq is also responsible for the assertions and suppressions of Sargeant.

68. Therefore, because the assertions, representations, and omissions went towards the terms, quality, and nature of the documents, the Master Sales Agreement is voidable.

69. Accordingly, Advanced Dermatology seeks a declaration pursuant to 12 O.S. § 1651 *et seq.* that the Master Sales Agreement is voidable and that Advanced Dermatology be relieved of its obligations under the Master Sales Agreement and may be rescinded.

70. Alternatively, Advanced Dermatology seeks any damages suffered as a result of the execution of the Master Sales Agreement and an award of punitive damages, as Sargeant's assertions and suppressions were intentional, reckless, and in disregard for the rights of Advanced Dermatology.

71. Additionally, Sargeant suggested and made as positive assertions, certain false representations to Advanced Dermatology that it was filing a credit application and that filling out said credit application did not constitute buying the Equipment.

72. Sargeant suppressed, concealed, and failed to disclose to Advanced Dermatology the true nature of the documents in that it was a Master Sales Agreement for the purchase of the Equipment.

73. These assertions, representations, and omissions were done with the intent to deceive so that Advanced Dermatology would execute the Master Sales Agreement for the purchase of the equipment.

74. These assertions, representations, and omissions constituted unfair and deceptive trade practices as defined in Oklahoma's Consumer Protection Act, 15 O.S. § 751 *et seq.*

75. Sargeant engaged in these unfair and deceptive trade practices during the course of his business with Zeltiq.

76. Thus, Zeltiq is also responsible for the assertions, representations, and omissions of Sargeant.

77. As a result of these actions, Advanced Dermatology has suffered damages and was induced into executing the Master Sales Agreement for the purchase of the Equipment.

78. Accordingly, Advanced Dermatology seeks all damages available to it under Oklahoma's Consumer Protection Act, 15 O.S. § 751 *et seq.*, including actual damages, costs and attorneys' fees, and civil penalties. Advanced Dermatology also seeks an award of punitive damages, as Sargeant's assertions, representations, and omissions were intentional, reckless, and in disregard for the rights of Advanced Dermatology.

79. Advanced Dermatology is entitled to its reasonable costs and attorneys' fees incurred in pursuing this action pursuant to the Oklahoma's Consumer Protection Act and other statutes of Oklahoma, as well as any other applicable statute or common law.

80. As a result of these actions, Sargeant should be disgorged of any profits or commissions received that resulted from his purported sale of the Equipment to Advanced Dermatology.

WHEREFORE, premises considered, Plaintiff Advanced Dermatology, Inc., P.C. prays this honorable Court grant judgment in its favor, and against Defendants Zeltiq Aesthetics, Inc. and Scott Sargeant as follows:

    a. For actual damages in excess of $75,000.00, exclusive of interest, and punitive damages in excess of $75,000.00 as a result of the assertions, representations, omissions, and suppressions of Sargeant that resulted in the execution of the Master Sales Agreement;

    b. For rescission of the Master Sales Agreement because of the assertions, representations, and suppressions of Sargeant as to the true nature of the Master Sales Agreement;

c.  For a declaration that the Master Sales Agreement is void and that no legal rights were created under the Master Sales Agreement;

d.  For a declaration that the Master Sales Agreement is voidable and that Advanced Dermatology be relieved of its obligations under the Master Sales Agreement and is entitled to rescission;

e.  For a finding the Sargeant's assertions, representations, and omissions consisted an unfair and deceptive trade practice in violation of Oklahoma's Consumer Protection Act, 15 O.S. § 751 *et seq.*, which warrant an award of actual damages, costs and attorneys' fees, in excess of $75,000.00 and civil penalties. Such conduct also entitles Advanced Dermatology to an award of punitive damages in excess of $75,000.00, as Sargeant's assertions, representations, and omissions were intentional, reckless, and in disregard for the rights of Advanced Dermatology;

f.  That Sargeant should be disgorged of any profits or commissions received that resulted from his purported sale of the Equipment to Advanced Dermatology;

g.  For its reasonable costs and attorneys' fees incurred in pursuing this action under the Oklahoma's Consumer Protection Act, as well as any other applicable statute or common law; and

h.  For such other and further relief as the Court may deem just and equitable under the circumstances.

Respectfully submitted,

*[signature]*

Jeffrey C. Baum, OBA #16443
Emily C. Krukowski, OBA #32038
BAUM GLASS & JAYNE
Mid-Continent Tower
401 S. Boston Ave, Suite 2300
Tulsa, Oklahoma 74103
Telephone: 918/938.7944
Facsimile: 918/938.7966
Email: jbaum@bgj-law.com
      ekrukowski@bgj-law.com

-and-

Brett D. Cable, OBA #19426
Amy Cable, OBA #22001
CABLE LAW, P.L.L.C.
438 E. Carl Albert Pkwy.
McAlester, Oklahoma 74501-4913
Telephone: 918/423.4000
Facsimile: 918/423.4001
Email: brett@cablelawpllc.com
      amy@cablelawpllc.com

ATTORNEYS FOR PLAINTIFF
ADVANCED DERMATOLOGY,
INC., P.C.

# VERIFICATION

STATE OF OKLAHOMA    )
                     )  ss:
COUNTY OF PITTSBURG  )

Tina Wilson, Chief Financial Officer of Plaintiff, of lawful age and being first duly sworn, states that she is the Chief Financial Officer of Advanced Dermatology, Inc., P.C., has read the foregoing Petition, that she is familiar with the contents thereof, and that the allegations set forth therein are true and correct.

*/s/ Tina Wilson*
Tina Wilson

Subscribed and sworn to before me this 8 day of May, 2017.

*/s/ Kristal Schoggins*
Notary Public

My Commission Expires: 10/19/17

> Notary Public State of Oklahoma
> KRISTAL SCHOGGINS
> Commission # 01017639
> Expires 10/19/17